Ryan P. Henson, Esq., ISB 6617
Bevis Thiry, Henson & Katz, P.A.
709 E. Riverpark Lane, Ste. 100
Boise, ID 82701-0827
Phone: (208) 345-1040, Fax: (208)345-0365
rhenson@bevislaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| DUSTIN INGRAM, FELISHA INGRAM, and L.I., Z.I., and D.I., minors, by and through their Guardian ad Litem, Seth Downham, | **Case No.** |
| Plaintiffs, | **COMPLAINT FOR RELIEF UNDER FRCP 60(d), DAMAGES AND INJUNCTIVE RELIEF** |
| v. | 1. *Monell* related claims (42 USC §1983) |
| ADA COUNTY, and DOES 1 through 20, Inclusive, | 2. Injunctive Relief. |
| Defendants. | JURY TRIAL REQUESTED |

Plaintiffs allege as follows:

**Rule 60(D) Requests**

1. Plaintiffs submit this Independent Action pursuant to the Federal Rule of Civil Procedure 60(d) requesting the Court to relieve Plaintiffs from the District Court's Order entered in the United States District Court Case No. 1:19-cv-00308-DCN, entitled Dustin Ingram et al. v. Katie Mouser et al. (herein "Underlying Action" or "UA") on February 1, 2021 (UA Dkt. 83) granting Defendant Ada County's Motion to Dismiss (UA Dkt. 68) Plaintiffs' Second Amended Complaint's (UA Dkt. 64) Fourth cause of action for *Monell* related claims (42 USC §1983) against Ada County.

**Applicable Allegations in Underlying Action**

2. Plaintiffs assert that the statutory or other basis for the exercise of jurisdiction in this United States Federal District Court for this Independent Action, and the Underlying Action, is based upon a federal question asserted under 42 U.S.C. §1983, due to Plaintiffs' claims of violations of their rights under the United States Constitution and laws, including those under the Fourth and Fourteenth Amendments which Plaintiffs request be tried and heard before a jury.

3. At all relevant times mentioned in this Complaint, Plaintiffs were residents of the State of Idaho. Seth Downham is the appointed Guardian ad Litem for minors L.I., Z.I., and D.I. in this action.

4. At all times mentioned herein, Defendant Ada County was and is a public entity organized and existing in the State of Idaho. Ada County Sheriff's Department (ACSD) is a subdivision of Ada County.  (Ada County was substituted for Ada County Sheriff's Department (ACSD) in the Underlying Action pursuant to the Court's Order on Plaintiffs Unopposed Motion to Substitute (UA Dkt. 80)).

5. Plaintiffs are ignorant of the true names and capacities of those Defendants sued herein as Does 1-20, inclusive, and therefore sue them by such fictitious names.

Plaintiffs will amend this Complaint to show the true names and capacities of said DOE defendants when the same are ascertained.

6. Plaintiffs are informed and believe and, based upon such information and belief allege that each of the Defendants is responsible in some manner for the events and happenings referred to herein and was the legal cause of injury and damages to Plaintiffs as herein alleged.

7. Plaintiffs are informed and believe and, based upon such information and belief allege, that, at all times herein mentioned, each and every Defendant was the agent and/or employee of their co-defendants, and each of them, acting at all relevant times herein under color of the authority of a governmental entity under the statutes, ordinances, regulations, customs and usage of the State of California and/or the United States Constitution and related laws.

8. DUSTIN INGRAM ("DUSTIN") is the natural father of Minors L.I. (born 2008), Z.I. (born 2010), and D.I. (born 2012). FELISHA INGRAM ("FELISHA") is the natural mother of said Minors.

9. In August 2017, the Ingram family was living in an RV in a park outside of Boise, Idaho. Dustin was working two jobs to provide income and support for his family. Dustin was trying to earn enough money to get the family out of the RV and into an apartment, as it was difficult for the family of 5 to live in the RV.

Removal of the Children from the Care and Custody of their Parents

10. On August 11, 2017, the Idaho Department of Health & Welfare Family and Children's Services Division (IDHW) received a referral from a neighbor of the Ingrams for possible physical abuse regarding one of the Ingram family's three children.

11. In the late afternoon of August 11, 2017, a social worker from IDHW and two Ada County Sheriff Deputies went to the Ingram family trailer, where they spoke with Felisha. Felisha informed the social worker and the deputies that minor Z.I. had

received a black eye from his brother, and brought Z.I. out for the officials to question and observe. During this time period, Z.I. confirmed that it was his brother who caused the bruise. Felisha also explained that a small mark on L.I.'s hand was from hot water that splashed onto her hand when she pulled a cup of hot water from the microwave. In the fact of additional questioning by the officials, Felisha informed them she would prefer they come back when her husband was at home. The social worker and deputies left the premises, leaving the children in the care and custody of their parents.

12. On August 15, 2017, Ada County Sheriff Deputy Jessica Johnson ("Johnson") spoke with IDHW social worker Katie Mouser ("Mouser") about the referral. During this conversation, Mouser informed Johnson about the remnants of the bruise on Z.I.'s face from his brother. Johnson determined they would contact the family the following day.

13. When Mouser and Johnson arrived at the trailer park on August 17, 2017, the children had been playing outside in the dirt all morning. Felisha and Dustin were cooperative and answered all of Johnson's questions. They also allowed Johnson and Mouser to enter and inspect their trailer.

14. Approximately 15 minutes into their visit, Johnson stated that she intended to declare the children to be in imminent danger due solely to the condition of the trailer, which she found to be cluttered and dirty. Approximately 16 minutes later, during which time the children continued to enter and exit the trailer, Johnson informed Dustin and Felisha that she was taking the children "So based not so much on the referral but based on the condition of the home." Johnson verified in her report that she declared the children in imminent danger based solely on the condition of the trailer. Johnson informed Dustin and Felisha that she did not need a warrant to remove the children due to the "toxic" condition of the trailer.

15. After informing the Ingrams that she was taking their children, Johnson continued to allow the children to enter and exit the trailer without interference for another 50 minutes, during part of which time she left to go get Mouser's vehicle.

16. Johnson did not, at any time, consider obtaining a warrant to remove the Ingram children, or discuss the issue of a warrant with Mouser. In addition, Johnson did not consider any less restrictive alternatives to taking the children.

Medical Procedures, including Examinations, and Parental Presence at such Procedures

17. After informing Felisha and Dustin that their children were being removed, Johnson made arrangements to have the children examined at St. Luke's Children at Risk Evaluation Services ("CARES") unit.

18. Johnson did not consider the possibility of obtaining an order or warrant for these examinations. Johnson did not obtain a signed medical release of information form or any other consent from either parent. Instead, she called the CARES unit and informed them of her belief the children were the victims of child abuse or neglect. There was no urgent medical condition that required the examinations.

19. Johnson did not inform either Felisha or Dustin that the children would be examined and did nothing to provide Felisha and Dustin with notice of and an opportunity to be present at the examinations.

20. At the CARES unit, complete physical examinations were conducted on each of the children, including examination of their genitals. These examinations were conducted without court order or warrant, and without notice to, consent of, or the presence of either Dustin or Felisha.

21. The forensic examinations conducted revealed that the children were dirty. However, no signs or symptoms were found which were consistent with abuse or severe neglect.

22. On August 17, 2017, a Shelter Care hearing was conducted and based upon Johnson's testimony, the juvenile court continued the detention of the children. The

Juvenile Court did not order or authorize further examinations or interviews of the children.

23. Despite the lack of court order, on August 18, 2017, Johnson scheduled interviews, psychosocial assessments and forensic medical examinations to be conducted at CARES for all three children. Johnson scheduled these forensic examinations and interviews for the purpose of finding evidence of abuse and/or neglect.

24. Johnson did not tell Felisha or Dustin that she was scheduling the interviews, psychosocial assessments or medical examinations. Johnson did not at any time provide Felisha or Dustin with the opportunity to be present or nearby when these examinations were conducted. Johnson did not ask Felisha or Dustin to sign a consent form to allow the examinations to occur. Johnson did not have a court order for the examinations.

**Applicable Pleadings in Underlying Action Regarding Rule 60(d)**

25. Plaintiffs filed a Motion for Partial Summary Judgment in the Underlying Action (UA Dkt. 153) which included a Motion for Reconsideration of the aforesaid District Court's Order on Defendant Johnson's Motion to Dismiss Plaintiffs Second Amended Complaint's Monell Fourth Cause of Action dismissing Plaintiffs' *Monell* claim against Ada County. Said motion was made under Federal Rule of Civil Procedure 60(d) as to Ada County's (a) failure to have a policy, procedure, practice or custom, and to train its officers, as to the removal of children based upon reasonable cause to believe that a child is in imminent danger of serious bodily injury in the time it would take to obtain a warrant using the least restrictive measures in doing so; (b) failure to have a policy, and to train their officers, that a court order, parental consent, or urgent medical need was required before any medical procedure, including examinations, could be performed to a child in protective custody; and (c) failure to have a policy, and to train their officers, that children and parents have the right for a

parent to be present at, or nearby, during medical procedures, including examinations when performed to a child in protective custody.

26. Plaintiffs based that motion for reconsideration, and this Independent Action, on the Declaration of Defendant Johnson and her supervisor sergeant, now captain, Jared Watson (see UA Dkt.s 128-1 & 128-2) confirming such failures, and violations, to the constitutional rights of Plaintiffs.

27. The District Court in the Underlying Action entered its Order granting Plaintiffs' Motion for Summary Judgment against Defendant Johnson and denying Defendant Johnson's Motion for Summary Judgment (UA Dkt. 180, hereafter "Summary Judgments Order") confirming that Defendant Johnson violated of all Plaintiffs Fourth and Fourteenth Amendment rights as to the warrantless removal of the children, the medical exams of the children (both sets of examinations) and lack of parental presence during the children's medical examinations.

28. The District Court's Summary Judgments Order (UA Dkt. 180) denied Plaintiffs' Rule 60(d) Motion to Reconsider as procedurally defective but confirmed that Rule 60(d) allows Plaintiff to file an independent action for relief from, or to set aside, the Court's prior order. That Summary Judgments Order also addressed that Plaintiffs did show that Ada County had a removal policy outlining that children may only be removed without a warrant when they are in imminent danger of serious bodily harm. However, the District Court's Summary Judgments Order did not address Plaintiffs *Monell* claims that Ada County did not have any practice, or training of its officers, on their removal policy; nor did it address the lack of a policy, procedure, practice or custom, or training thereto, as to the clearly established constitutional requirements of obtaining parental consent or a warrant, in the absence of urgent medical need, before medical procedures, including examinations, could be performed to children in protective custody, or as to the constitutional rights of

parents and children to have a parent present, or nearby, when medical procedures, including examinations, are performed to children in protective custody.

29. Plaintiffs assert that Defendant Johnson's Motion for Summary Judgment's Declarations of Defendant Johnson and her supervisor, sergeant, now captain, Jared Watson (see UA Dkt.s 128-1 & 128-2), along with Ada County's policy and procedures, or lack thereof, obtained in discovery, as identified in Plaintiffs' motion and opposition summary judgment filings, confirm that Plaintiffs should be relieved from the District Court's prior order granting Ada County's Motion to Dismiss Plaintiffs' *Monell* Claims (UA Dkt. 68).

30. Said relief should be granted as Defendant Johnson has admitted in her Declaration that she was not trained by Ada County to evaluate whether the children would be harmed in the time it would take to get a court order, or on the process to get a warrant to remove a child from a hazardous neglectful home. Defendant Johnson also admits she scheduled medical examinations for the children on August 17, 2017, and on August 25th and September 6th, 2017, but was not aware of any policies or practices, or training thereon, by Ada County regarding the constitutional requirements of obtaining parental consent or warrant, in the absence of urgent medical need, before a child in protective custody could be submitted to medical procedures, including examinations, or as to the constitutional right of parents and children to have a parent present, or nearby, when medical procedures, including examinations, are performed to children in protective custody. (See UA Dkt. 128-1).

31. Defendant Johnson's supervisor Sergeant, now Captain, also confirmed that there was no Ada County policy or training to evaluate whether a child would have been harmed in the time it would take to obtain a warrant or court order before removing a child from their parents' custody. (See UA Dkt. 129-2).

32. Furthermore, Defendant Johnson has taken the position in her Motion for Summary Judgment filings that Idaho law and Ada County policy "authorized law

enforcement to remove children without a warrant when they are in imminent danger, notwithstanding a determination of whether the children would be harmed in the time it would take to get a warrant." (See UA Dkt. 161, p. 18 of 33).

33. Defendant Johnson also asserts (incorrectly) the position that the mere fact the children were in protective custody eviscerated any constitutional rights of the parents and children, regarding any requirement for parental consent, order, or urgent medical need before conducting medical procedures, including examinations, or any requirement for parents to be present or nearby during such medical procedures, including examinations. (See UA Dkt. 161, p. 19 to 21 of 33).

34. Plaintiffs assert that any "demanding standard" under Rule 60(d) for relief from the Court's order dismissing Plaintiffs *Monell* cause of action against Ada County is met by the fact of Defendant Johnson's and her supervisor's declarations' admissions that Ada County does not provide any training on the constitutional requirements for warrantless removal of children, and also that there are no Ada County policies, procedures, practices or customs, much less training, on the constitutional requirements for conducting medical procedures, including examinations, and the right of children and parents for parents to be present, or nearby, during those procedures.

35. Defendant Johnson's unconstitutional actions, confirmed by the District Court in its Summary Judgments Order, in violation of Plaintiffs' Fourth and Fourteenth Amendment rights, was a proximate result of not only Defendant Johnson's lack of knowledge of clearly established constitutional law, but also the lack of any practices and/or polices, and any training thereon, as to the applicable constitutional requirements, referred to above, by her employer Ada County.

36. A grave miscarriage of justice will result to Plaintiffs if the District Court does not relieve Plaintiffs from the Court's Motion to Dismiss Order as not doing so will prevent Plaintiffs from pursuing their *Monell* claims against Ada County when the

actions of Defendant Johnson were clearly due to the unconstitutional policies, procedures, practices and/or customs, and lack of training thereto, of Ada County thorough it's deliberate indifference to the constitutional rights of these, and other, parents and children (which were clearly established constitutional law by August of 2017, as this Court has already determined in its Summary Judgments Order). A Judgment/Finding as to Defendant Johnson alone, without a *Monell* finding against Ada County, does not ensure a change in Ada County's policies, procedures, practices and customs, and the necessary training thereto, that protects the Fourth and Fourteenth Amendment rights of Plaintiffs, and other similar parents and children, which the District Court has found were violated by Ada County Defendant Johnson.

**37.** Furthermore, a grave miscarriage of justice will result to Plaintiffs if the District Court does not relieve Plaintiffs from the Court's Motion to Dismiss Order as Defendant Johnson can, and undoubtedly will, assert during the damage phase of any trial in the Underlying Action, that her lack of knowledge of the aforementioned clearly established constitutional law was due to her employer's, Defendant Ada County herein, failure to implement the applicable policies, procedures, practices and/or customs, and the necessary training thereto, regarding the aforementioned constitutional requirements established to protect the civil rights of parents and children under the Fourth and Fourteenth Amendments which the District Court found Defendant Johnson violated. However, Ada County's culpability in its failure to implement those policies, procedures, practices and/or customs, and the necessary training thereto, will not be placed before the trier of fact in the Underlying Action and thus Plaintiffs will not be fully compensated for the violations of their constitutional rights in that Underlying Action unless the *Monell* claims against Ada County are allowed in this Independent Action.

**38.     Ada County Policies, Procedures, Practices and Customs, and Training (or Lack Thereof)**

39. Ada County, including its Sheriff's Department, does have a policy or procedure outlining that children may only be removed without a warrant when they are in imminent danger of serious injury. However, Ada County has not implemented that policy or procedure into any practice or custom, and has not implemented that policy or procedure in any training to its officers (as acknowledged in Defendant Johnson's and her supervisor Watson's declarations referenced herein).

40. In addition, Ada County, including its Sheriff's Department, does not train its officers, including, but not limited to Johnson (one of ACSD's main officers to respond to reports of child abuse and/or neglect) on many of the constitutional requirements surrounding the removal of children. Specifically, Ada County, including its Sheriff's Department, does not train its officers:

   a.  On what is required to remove children from the care and custody of their parents without a warrant – i.e., on the need to be able to articulate the reasons why the officers believe the child is in imminent danger of serious bodily harm in the time it would take to obtain a warrant.

   b.  On the requirement that the officer must consider means less restrictive than removal to protect the children.

   c.  On the protocol to obtain a warrant or court order to remove children.

41. Ada County, including its Sheriff's Department, also does not have a policy, nor does it train its officers, on the constitutional requirements of obtaining, parental consent or court order, in the absence of urgent medical need, before subjecting a child in protective custody to medical procedures, including examinations.

42.  Ada County, including its Sheriff's Department, also does not have a policy, procedure, practice and/or custom, nor does it train its officers, on the constitutional requirements of informing parents of a medical procedure, including examinations, of

a child in protective custody and giving the children and parents the opportunity for a parent to be present, or nearby, when the child is subjected to medical procedures, including examinations.

43. Ada County, including its Sheriff's Department, was deliberately indifferent to the need to enact policies, procedures, practices and customs, and to implement training, on the constitutional requirements listed above, and knew, or should have known, that its failure to enact constitutionally adequate policies, procedures, practices and customs and/or procedures, and to implement training on such constitutional requirements, would lead to unlawful and unconstitutional violations of parents' and children's Fourth and Fourteenth Amendment rights.

44. Ada County, including its Sheriff's Departments, failure to enact or implement policies and/or procedures, and failure to train its officers, including Johnson, on the constitutional requirements listed above, was a moving force behind the constitutional violations of the rights of the Plaintiff Ingram parents and children.

## FIRST CLAIM FOR RELIEF
## MONELL RELATED CLAIMS

45. Plaintiffs reallege, adopt and incorporate as if set forth at length, and to the extent applicable, all paragraphs set forth hereinabove.

46. At all relevant times herein, Defendant Ada County, including its Sheriff's Department, established and/or followed policies, procedures, practices and/or customs which were the cause of violation of Plaintiffs' constitutional rights granted to them pursuant to 42 U.S.C. §1983, as well as the case of *Monell v. New York City Department of Social Services*, 436 U.S. 658(1978), including those under the Fourth, and Fourteenth Amendments, but not limited to:

a.    The practice and custom of detaining and/or removing children from their parents without exigent circumstances (imminent danger of serious bodily harm from that

parent(s)), without obtaining court order and/or consent of their parent or legal guardian, and without consideration of less restrictive methods available to protect the child (in violation of *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000); *Mabe v. County of San Bernardino*, 237 F.3d 1101 (9th Cir. 2001); *Rogers v. County of San Joaquin*, 487 F.3d 1288 (9th Cir. 2007), and other applicable case and statutory law);

b. The policy, procedure, practice and/or custom of conducting medical procedures, including examinations, on children removed from their parents without urgent medical need, court order or warrant, or parental consent; and without proper notice to the parents, in violation of the Constitutional rights of children and their parents, as discussed in *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir.2000), and as confirmed in *Mann v. County of San Diego*, 907 F.3d 1154 (9th Cir.2018) and other applicable case and statutory law).

c. The policy, procedure, practice and/or custom of conducting medical procedures, including examinations, to children removed from their parents without proper notice to the children's parents and giving them the right to be present, or nearby, when their child was subject to medical procedures including examinations, as discussed in *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir.2000), *Greene v. Camreta*, 588 F.3d 1011 (9th Cir.2009), and as confirmed in *Mann v. County of San Diego*, 907 F.3d 1154 (9th Cir.2018), and other applicable case and statutory law).

d. By acting with deliberate indifference in failing to train its officers, agents and employees in providing the Constitutional protections guaranteed to individuals, including those under the Fourth, and Fourteenth Amendments, when performing the aforesaid actions related to the removal of children, conducting medical procedures, including examinations, and allowing parental presence during medical procedures, including examinations, as more fully described above.

47. Defendant Ada County, including its Sheriff's Department, had a duty to Plaintiffs at all times to establish, implement, and follow policies, procedures, practices

and/or customs, which confirm and provide for the protections guaranteed to children and their parents under the United States Constitution, including the Fourth, and Fourteenth Amendments; to use reasonable care to train its agents, officers, and employees in such constitutional rights; and to refrain from acting with deliberate indifference to the Constitutional rights of Plaintiffs herein so as to not cause them the injuries and damages alleged herein.

48. Defendant Ada County, including its Sheriff's Department, breached its duties and obligations to Plaintiffs, including but not limited to, failing to establish, implement, and follow the correct and proper Constitutional policies, procedures, practices and/or customs, and by its deliberate indifference in failing to train its agents and employees as to their compliance with such Constitutional safeguards; including by permitting Johnson to engage in the unlawful and unconstitutional conduct as herein alleged and as found by the District Court to have violated the rights of Plaintiffs..

49. Defendant Ada County, including its Sheriff's Department, knew, or should have known, that by breaching the aforesaid duties and obligations, it was foreseeable that it would, and did, cause Plaintiffs to be injured and damaged by its wrongful policies, procedures, practices and/or customs, and acts as alleged herein and that such breaches occurred in contravention of public policy and as to its legal duties and obligations to Plaintiffs. Plaintiffs are informed and believe that Defendant Ada County, including its Sheriff's Department, continues these wrongful policies and acts and will do so unless and until it is enjoined by this Court.

50. These actions, or inactions, of Defendant Ada County, including its Sheriff's Department, were the moving force behind and a legal cause of injuries to Plaintiffs as alleged herein. As a result, thereof, Plaintiffs have sustained general and special damages, as well as incurring attorney's fees, costs, and expenses, including those as authorized by 42 U.S.C. §1988, to an extent and in an amount subject to proof at trial.

## SECOND CLAIM FOR RELIEF
## INJUNCTIVE RELIEF

51. Plaintiffs re-allege, adopt, and incorporate, as if set forth at length, and to the extent applicable, all paragraphs set forth hereinabove.

52. As stated herein, Plaintiffs, as citizens and individuals, are protected by the laws and Constitution of the State of Idaho, as well as those of the United States, including the Fourth and Fourteenth Amendments thereto of the United States Constitution. These laws also include, but are not limited to, the legal precedent established by the Ninth Circuit decisions in *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir.2000)*, Mabe v. San Bernardino County*, 237 F.3d 1101 (9th Cir.2001)*, Rogers v. San Joaquin*, 487 F.3d 1288 (9th Cir.2007)*,* and *Greene v. Camreta*, 588 F.3d 1011 (9th Cir.2009)*,* and as confirmed in *Mann v. County of San Diego*, 907 F.3d 1154 (9th Cir.2018).

53. As stated herein, Defendant Ada County, including its Sheriff's Department, has wrongfully and unlawfully, and with deliberate indifference to the aforesaid rights of Plaintiffs and to its duties and obligations to Plaintiffs, and parents and children similarly situated, practiced and/or adopted policies, procedures, practices and/or customs, and Plaintiffs are informed and believe, continue to practice and/or adopt such policies, procedures, practices and/or customs, which are in violation of the Constitutional rights of Plaintiffs, including the right to be free from governmental interference as to their familial associations and from unreasonable searches or seizures, including, those relating to child abuse allegations and related actions and proceedings in investigations and proceedings as set forth herein.

54. Defendant Ada County, including its Sheriff's Department, has failed to acknowledge its improper, unlawful, and unconstitutional actions, conduct and policies, procedures, practices and/or customs, at the time of the subject incidents herein, or at any time thereafter, and Plaintiffs are informed and believe, and on that basis allege, that presently Ada County, including its Sheriff's Department, has not changed or modified

such actions, conduct, and/or policies, procedures, practices and/or customs, nor implemented training, to conform to law. As a result, an actual threat of further violations of parents and children's constitutional rights continues to exist.

55. Defendant Ada County, including its Sheriff's Department's, wrongful and unlawful conduct, actions and/or policies, procedures, practices and/or customs, unless and until enjoined and restrained by order of the court, will cause, and continue to cause, great and irreparable injury to Plaintiffs, and other parents and children, in that Defendants will continue to act in accordance with said unlawful policies, procedures, practices and/or customs, and with deliberate indifference to its duties and obligations under the laws and Constitution of the United States including the Fourth and Fourteenth amendments as herein alleged.

56. Plaintiffs have no adequate remedy at law to prevent or prohibit Defendant Ada County from continuing, and/or repeating, its unlawful and unconstitutional conduct and policies, procedures, practices and/or customs, and lack of applicable training, in conformance with constitutional law, other than through injunctive relief, and therefore seek an order enjoining, prohibiting and mandating it from, but not limited to, the following:

a.      From failing to establish, implement, and follow policies, procedures, practices and customs, and training, which are consistent with the Constitution of the United States and federal and state law as to the removal of children from the care and custody of their parents and/or guardians. Specifically, Plaintiffs seek an order enjoining and prohibiting Defendant Ada County, including its Sheriff's Department, from removing children from their parents and/or guardians, in the absence of court order or warrant, without articulable evidence that the child is in imminent danger of serious bodily injury in the time it would take to obtain a warrant, and that said Defendants must be able to establish that removal is the least restrictive method available to protect the child.

b.      From failing to establish, implement, and follow policies, procedures, customs and practices, and training, which are consistent with the Constitution of the United States and federal and state law as to conducting medical procedures, including examinations and testing, of children while conducting dependency investigations and proceedings of minor children in alleged child abuse or neglect matters. Specifically, Plaintiffs seek an order enjoining and prohibiting said Defendant Ada County from conducting medical procedures, including examinations and testing, of children, in the absence of urgent medical need, warrant or court order, or parental consent, and by giving notice to the parents.

c.      From failing to establish, implement, and follow policies, procedures, customs and practices, and training, which are consistent with the Constitution of the United States and federal and state law as to conducting medical procedures, including examinations and testing, of children and providing parental presence during said procedures, even when Court ordered, while conducting dependency investigations and/or proceedings of minor children in alleged child abuse or neglect matters. Specifically, Plaintiffs seek an order enjoining and prohibiting said Defendant Ada County from conducting medical procedures, including examinations and testing, of children without giving parents and children the right to have a parent present, or nearby, when a child receives medical procedures, including examination and testing, even when that medical procedure, including examination and testing, is ordered by the Court.

d.      From failing to properly train its officers, agents and employees as to their compliance with those principles mandated by the Fourth, and Fourteenth Amendments to the United States Constitution and laws in their conduct of child abuse and neglect investigations and proceedings, removal of children without a warrant, and including medical procedures, including examinations and testing, and the right that a parent be present during such procedures, including, but not limited to, those as to the right of

privacy, rights of parents as to the care and custody of their children without unjustified state interference, the rights of parents to make medical decisions for their children, the rights of children to be free from unwarranted searches and seizures and the right of children and parents for a parent to be present, or nearby, when their child is receiving medical attention.

e. From such other prohibited and unlawful conduct as set forth herein.

## PRAYER

WHEREFORE, Plaintiffs request trial by jury and pray judgment against Defendants as follows:

1. That the District Court grant Plaintiffs' request for relief under FRCP 60(d) and set aside its prior Order on Motion to Dismiss Plaintiffs' Second Amended Complaint's Fourth Cause of Action under *Monell* (UA Dkt. 64) and allow Plaintiffs to proceed with this Independent Action;

2. General damages and special damages according to proof;

3. Injunctive Relief as allowed by law (including preliminary injunctive relief based upon separate application);

4. Attorney's fees, costs and expenses pursuant to 42 U.S.C. §1988, and any other appropriate statute;

5. Costs of suit incurred herein;

6. For a Jury Trial on all applicable issues; and

7. Such further relief as the Court deems just and proper.

DATED: March 21, 2024　　　BEVIS, THIRY, HENSON & KATZ, P.A.

　　　　　　　　　　　　　　*/s/ Ryan Henson*
　　　　　　　　　　　　　　RYAN HENSON, Attorney for Plaintiffs